# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SEALED

CASE NO. _

IN THE MATTER OF
THE EXTRADITION OF
EYLEM TOK

_____/

FILED BY_____D.C.

MAY 03 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**COMPLAINT**
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter I represent the United States in fulfilling its treaty obligations to the Republic of Türkiye (Türkiye).

2. There is an Extradition Treaty in force between the Government of the United States of America and the Government of Türkiye: Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Turkey, U.S.-Turk., June 7, 1979, 32 U.S.T. 3111 (the "Treaty").[1]

3. Pursuant to the Treaty, the Government of Türkiye has submitted a formal request through diplomatic channels for the extradition of Eylem Tok ("Tok").

4. According to information provided by the Government of Türkiye, Tok is wanted for prosecution on a charge of Protecting an Offender, in violation of and punishable by Article

---

[1] While this remains the title of the Treaty, the United Nations now recognizes Türkiye as the official spelling of the Requesting State. The U.S. Department of State also recognizes Türkiye as the proper spelling in its official correspondence.

283/1 of the Criminal Code of Türkiye.[2] This offense was committed within the jurisdiction of Türkiye.

5. At the request of the Chief Public Prosecutor's Office of Istanbul, a Chief Judge from the Istanbul 7th Criminal Judgeship of Peace issued a warrant for Tok's arrest on March 6, 2024. The extradition request presents the following facts as the basis for the arrest warrant and extradition request:

   a. Tok is accused of assisting her 16-year-old son, T.C., to flee Turkey immediately after he caused a fatal car crash. T.C., who is also sought for extradition to Türkiye, allegedly killed one person and injured several others when he drove his vehicle at an excessively high rate of speed around a corner late at night on March 1, 2024. T.C. fled the scene before authorities arrived. Within hours of the crash, Tok and T.C. had purchased airline tickets and fled Türkiye for the United States, via Cairo, Egypt.

   b. On the night of March 1, 2024, T.C. was driving a Porsche with three passengers, one in the front, A.K., and two in the back, A.A. and B.A. T.C.'s friend, D.O.O., was driving another vehicle, also with passengers, directly behind T.C.'s vehicle.

   c. Pursuant to Article 76 of the Regulation on Road Traffic, a person must be at least the age of eighteen to secure a driver's license in Türkiye. Accordingly, Turkish authorities confirmed that T.C. did not have a driver's license or otherwise have legal permission to drive at the time of the crash.

   d. At around 11:20 p.m., T.C. and D.O.O. were driving on a road with a speed limit of 30 kilometers per hour (approximately 18 miles per hour). According to

---

[2] Türkiye also sought Tok's extradition on a charge of Destroying, Concealing, or Altering Evidence, in violation of Article 281 of the Turkish Criminal Code. However, the United States is not forwarding that charge to the court for consideration.

statements provided by T.C.'s passengers to Turkish authorities, T.C. suddenly began driving his vehicle faster after they passed a speed breaker on the road. The passengers requested that T.C. slow down, but he did not do so. In response, at least some of the passengers then put on their seat belts just "in case."

  e. The vehicle approached a curve in the road, and according to T.C.'s passengers, T.C. was driving too fast through the bend. As they were driving through the bend, T.C. and his passengers noticed something on the right side of the road. It was a group of people with all-terrain vehicles ("ATVs"). In response, T.C. suddenly turned the steering wheel in apparent effort to avoid hitting the group, but the car started to skid and hit the ATVs. T.C.'s car ended up on the opposite side of the road in a water channel, and the air bags deployed.

  f. According to D.O.O., who was driving behind T.C. at the relevant time, T.C. had significantly increased his driving speed and entered a bend in the road too fast. D.O.O. lost sight of T.C.'s vehicle for several seconds as it went around the bend. When D.O.O. reached the bend, he saw T.C.'s vehicle lose control and crash into a water channel. D.O.O. immediately stopped his vehicle and noticed two men lying on the side of the road.

  g. At the time of the crash, five individuals were stopped on the side of the road because one of their ATV vehicles had broken down. One of the individuals died from the impact with T.C.'s car; all the others were injured.

  h. According to witnesses, T.C. and his friends had been driving around for some time before the crash. None of the passengers in T.C.'s or D.O.O.'s vehicles reported to authorities that T.C. had been intoxicated, although T.C. fled the scene before any tests could be performed. There also did not appear to be any indication that T.C.'s vehicle had malfunctioned.

  i. According to a forensics report, authorities estimated that T.C.'s vehicle was traveling at approximately 170-180 kilometers per hour (approximately 105-111 miles per hour) at the time of the crash, which was significantly over the 30 kilometers per hour speed limit on the road.

  j. T.C. called his private driver immediately after the crash, who then conveyed information to Tok. T.C. may have also called Tok directly. An employee of Tok's ex-husband, who is T.C.'s father, told authorities that the employee and Tok then drove to the scene and took T.C. and two of his friends home.

  k. According to T.C.'s private driver, afterward he then left with Tok to return to the scene of the crash, but they turned around and returned to her residence as soon as they saw a police presence.

  l. Tok's ex-husband's employee told authorities that she then took Tok and T.C. to the airport. Video surveillance footage from Tok's residential complex and the airport corroborate the employee's account.

  m. A.K., the front seat passenger in T.C.'s vehicle, identified Tok to Turkish authorities as the mother of T.C., the person who was driving the Porsche that hit five individuals stopped on the side of the road. A.K. also identified Tok as the person who came to the scene of the accident with another woman and took T.C. home.

  n. According to surveillance footage at the airport, Tok and T.C. arrived at the Egyptair ticket sales office around 2:35 a.m. on March 2, 2024, only three hours after the crash. Tok purchased one-way tickets on a 3:50 a.m. flight from Istanbul, Türkiye, to Cairo, Egypt, for herself and T.C. They continued on to the United States and landed in New York on March 2, 2024

  o. Tok and T.C. were later observed in New York City, New York.

  p. According to information provided from Turkish law enforcement to Interpol, Tok and T.C. are now believed to be in Miami, Florida.

 6. According to information gathered and provided by the U.S. Marshals Service, Tok is expected to be found within the jurisdiction of this Court.

 7. Tom Heinemann, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and providing a copy of the Treaty. The declaration states that the offense for which extradition is sought is covered by the Treaty. It also confirms that the documents supporting the request for extradition bear the certificate or seal of the Ministry of Justice of Türkiye and, alternatively, are properly certified by the principal U.S. diplomatic or consular officer in Türkiye in accordance with Title 18, United States Code, Section 3190, so as to enable them to be received into evidence.

 8. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from Türkiye, a copy of the Treaty, and the certified documents submitted in support of the request, are filed with this complaint and incorporated by reference herein (marked collectively as Government's Exhibit 1).[3]

 9. Tok would likely flee if she learned of the existence of a warrant for her arrest.

---

[3] The United States will file an unredacted copy of Government's Exhibit 1 as a separate docket entry under seal. Once this complaint is unsealed, the United States will file a redacted copy of Government's Exhibit 1.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with Title 18, United States Code, Section 3184 and the extradition treaty between the United States and Türkiye, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered, and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

Lindsey Maultasch
Assistant United States Attorney

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time this __2nd__ day of May 2024, at Miami, Florida.

HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA