# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN THE MATTER OF            )
THE EXTRADITION OF          )   No. 24-mj-01365-DLC
EYLEM TOK                   )

**<u>AMENDED COMPLAINT</u>**
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter I represent the United States in fulfilling its treaty obligations to the Republic of Türkiye (Türkiye).

2. There is an Extradition Treaty in force between the Government of the United States of America and the Government of Türkiye: Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Turkey, U.S.-Turk., June 7, 1979, 32 U.S.T. 3111 (the "Treaty").[1]

3. Pursuant to the Treaty, the Government of Türkiye has submitted a formal request through diplomatic channels for the extradition of Eylem Tok ("Tok").

4. According to information provided by the Government of Türkiye, Tok is wanted for prosecution on one charge of Destroying, Concealing or Altering Evidence, in violation of Article 281 of the Criminal Code of Türkiye, and one charge of Protecting an Offender, in violation of and punishable by Article 283 of the Criminal Code of Türkiye. These offenses were committed within the jurisdiction of Türkiye.

---

[1] While this remains the title of the Treaty, the United Nations now recognizes Türkiye as the official spelling of the Requesting State. The U.S. Department of State also recognizes Türkiye as the proper spelling in its official correspondence.

5. At the request of the Chief Public Prosecutor's Office of Istanbul, a Judge from the Istanbul 7th Criminal Judgeship of Peace issued a warrant for Tok's arrest on the charge of Protecting an Offender on March 6, 2024. On March 13, 2024, a Judge from the Istanbul 10th Criminal Judgeship of Peace issued a warrant for Tok's arrest on the charge of Destroying, Concealing or Altering Evidence. The extradition request, and corresponding supplement, presents the following facts as the basis for the arrest warrants and extradition request:

    a. Tok's minor son, T.C., who is also sought for extradition to Türkiye, allegedly killed one person and injured several others when he drove his vehicle at an excessively high rate of speed around a corner late at night on March 1, 2024. Tok is accused of assisting T.C. and other eyewitnesses to flee the scene of the fatal car crash, thus preventing Turkish authorities from obtaining contemporaneous statements from witnesses and collecting evidence from T.C. Tok is also accused of assisting T.C. with avoiding arrest by leaving Türkiye immediately after the crash. Within hours of the crash, Tok and T.C. had purchased airline tickets and fled Türkiye for the United States, via Cairo, Egypt.

    b. On the night of March 1, 2024, T.C. was driving a Porsche with three passengers, one in the front, A.K., and two in the back, A.A. and B.A. T.C.'s friend, D.O.O., was driving another vehicle, also with passengers, directly behind T.C.'s vehicle.

    c. Pursuant to Article 76 of the Regulation on Road Traffic, a person must be at least the age of eighteen to secure a driver's license in Türkiye. Accordingly, Turkish authorities confirmed that T.C. did not have a driver's license or otherwise have legal permission to drive at the time of the crash.

    d. At around 11:20 p.m., T.C. and D.O.O. were driving on a road with a speed limit of 30 kilometers per hour (approximately 18 miles per hour). According to

statements provided by T.C.'s passengers to Turkish authorities, T.C. suddenly began driving his vehicle faster after they passed a speed bump on the road. The passengers requested that T.C. slow down, but he did not do so. In response, at least some of the passengers then put on their seat belts just "in case."

    e.  The vehicle approached a curve in the road, and according to T.C.'s passengers, T.C. was driving too fast through the bend. As they were driving through the bend, T.C. and his passengers noticed something on the right side of the road. It was a group of people with all-terrain vehicles ("ATVs"). In response, T.C. suddenly turned the steering wheel in apparent effort to avoid hitting the group, but the car started to skid and hit the ATVs. T.C.'s car ended up on the opposite side of the road in a water channel, and the air bags deployed.

    f.  According to D.O.O., who was driving behind T.C. at the relevant time, T.C. had significantly increased his driving speed and entered a bend in the road too fast. D.O.O. lost sight of T.C.'s vehicle for several seconds as it went around the bend. When D.O.O. reached the bend, he saw T.C.'s vehicle lose control and crash into a water channel. D.O.O. immediately stopped his vehicle and noticed two men lying on the side of the road.

    g.  At the time of the crash, five individuals were stopped on the side of the road because one of their ATVs had broken down. One of the individuals died from the impact with T.C.'s car; all the others were injured. According to witnesses, T.C. and his friends had been driving around for some time before the crash. None of the passengers in T.C.'s or D.O.O.'s vehicles reported to authorities that T.C. had been intoxicated, although T.C., with assistance from Tok, fled the scene before any tests could be performed. There also did not appear to be any indication that T.C.'s vehicle had malfunctioned.

Case 1:24-cr-10643-DBL CDocument 157 Filed 07/31/25 Page 4 of 7

    h.  According to a forensics report, authorities estimated that T.C.'s vehicle was traveling at approximately 170-180 kilometers per hour (approximately 105-111 miles per hour) at the time of the crash, which was significantly over the 30 kilometers per hour speed limit on the road.

    i.  T.C. called his private driver immediately after the crash, who then conveyed information to Tok. T.C. may have also called Tok directly. An employee of Tok's ex-husband, who is T.C.'s father, told authorities that the employee and Tok then drove to the scene and took T.C., D.O.O., and another friend home without reporting the accident to law enforcement or requesting paramedics to the scene.

    j.  At the scene of the crash, one of the surviving victims had handed his cell phone to one of T.C.'s friends to use the flashlight feature to examine the victim's headwound. According to T.C.'s friend, he absentmindedly put the victim's cell phone in his pocket and left the scene with it. When T.C.'s friend later realized he had the phone, he gave it to another friend who had planned to return to the scene of the crash. That friend left the cell phone with the security guards at the residential complex where they had gone after the crash. Tok later arrived and took the phone from the security guards, claiming to know the owner and saying that she would return it to him. There is no evidence Tok knew the owner of the phone. Tok encouraged the other minors who had been out with T.C. that night to leave the area, and criticized one of the parents for giving the security guards her name and contact information.

    k.  According to T.C.'s private driver, after leaving the residential complex, he and Tok drove toward the scene of the crash, but they turned around and returned to her residence as soon as they saw a police presence at the crash scene.

4

l. Tok's ex-husband's employee told authorities that she then took Tok and T.C. to the airport. Video surveillance footage from Tok's residential complex and the airport corroborate the employee's account.

m. A.K., the front seat passenger in T.C.'s vehicle, identified Tok to Turkish authorities as the mother of T.C., the person who was driving the Porsche that hit five individuals stopped on the side of the road. A.K. also identified Tok as the person who came to the scene of the accident with another woman and took T.C. home.

n. According to surveillance footage at the airport, Tok and T.C. arrived at the Egyptair ticket sales office around 2:35 a.m. on March 2, 2024, only three hours after the crash. Tok purchased one-way tickets on a 3:50 a.m. flight from Istanbul, Türkiye, to Cairo, Egypt, for herself and T.C. They continued on to the United States and landed in New York on March 2, 2024. T.C.'s private driver later found the victim's cell phone in Tok's car and provided it to Turkish authorities.

6. Pursuant to the extradition requests submitted by Türkiye to the United States, the U.S. Attorney's Office in the Southern District of Florida obtained warrants for Tok's and T.C.'s arrests on May 3, 2024. Those warrants were executed and Tok and T.C. were arrested in Boston, Massachusetts, on June 14, 2024.

7. Tom Heinemann, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic notes by which the request for extradition was made and providing a copy of the Treaty. The declaration states that the offenses for which extradition is sought are covered by the Treaty. It also confirms that the documents supporting the request for extradition bear the certificate or seal of the Ministry of Justice of Türkiye and, alternatively, are

5

properly certified by the principal U.S. diplomatic or consular officer in Türkiye in accordance with Title 18, United States Code, Section 3190, so as to enable them to be received into evidence.

8. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic notes from Türkiye, a copy of the Treaty, and the certified documents submitted in support of the request, are filed with this complaint and incorporated by reference herein (marked collectively as Government's Exhibit 1 hereto).[2]

WHEREFORE, the undersigned requests that, in accordance with Title 18, United States Code, Section 3184 and the extradition treaty between the United States and Türkiye, the fugitive be brought before this Court to the end that the evidence of criminality may be heard and considered.

*Kristen Kearney* /DLC/
KRISTEN A. KEARNEY
Assistant U.S. Attorney

Sworn to telephonically this 1st day of July, 2024, at 11:30 a.m./p.m.

HON. DONALD L. CABELL
United States Magistrate Judge

---

[2] The United States will file an unredacted copy of Exhibit 1 to this Amended Complaint under seal and a redacted copy on the public docket.