# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF<br>THE EXTRADITION OF<br>EYLEM TOK | No. 1:24-MJ-01365-DLC |

## AFFIDAVIT ON *VERBA LEGIS* and APPLICATION of TURKISH CRIMINAL LAW

I, Dr. Aras Türay, I hereby declare the following to be true to the best of my knowledge and belief:

1. I worked as a teaching assistant at Istanbul Bilgi University Faculty of Law, Department of Criminal and Criminal Procedure between 2012-2014 and as a permanent research assistant between 2015-2019. In 2019-2020, I worked as an assistant professor at Istanbul Gedik University Faculty of Law, Department of Criminal and Criminal Procedure. Since September 2021, I have been working as an associate professor doctor at Özyeğin University Faculty of Law, Department of Criminal and Criminal Procedure.

2. Since 2017, I have been a member of the Board of Directors of the Turkish Criminal Law Association (TCHD), the national group of the International Association of Penal Law (AIDP) in Turkey, and the chairman of the editorial board of the association.

3. I have been provided by the defense counsel to answer the following questions:

    (a) How is 'destruction' defined under Article 281 of the Turkish Criminal Code ('Destruction, concealment or alteration of evidence')? How is 'concealment' defined? How is 'alteration' defined?

    (b) Could the removal of minors from the accident scene after the arrival of emergency service teams constitute the offence of 'Destruction, Concealment or Alteration of Evidence' under Article 281 of the Turkish Criminal Code?

        i. Under Turkish law, may a minor be questioned by law enforcement officers at the scene of an accident without a lawyer or parent present?

        ii. What procedures are required for a minor to be questioned by law enforcement officers?

        iii. After the emergency service teams arrive, does delaying the statement of minors to the police by removing them from the accident scene constitute the offence of 'Destroying, Concealing or Altering Evidence' under Article 281 of the Turkish Criminal Code?

    (c) Could a parent who removes his/her own child from the scene of an accident be sentenced under Article 281 of the Turkish Criminal Code for the offence of 'Destroying, Concealing or Altering Evidence'? Can Article 281 be used to accuse a parent for an act which, if committed by a parent, could not be punishable under Article 283?

    (d) If the Prosecutor's Office has not provided any evidence that a concealed item has evidential value, is there sufficient evidence to charge/arrest the concealer with 'Destroying, Concealing or Altering Evidence' under Article 281 of the Turkish Criminal Code?

    **(e)** Could the parent of a protected offender be convicted of an offence under Article 283 of the Turkish Criminal Code?

    **(f)** If the accused is the parent of a protected offender, could any penalty be imposed under Article 283 of the Turkish Criminal Code?

    **(g)** In cases where the Government claims that a person is the mother of a protected offender, is further evidence of relatedness required?

    **(h)** Is it possible to prosecute for a breach of Article 283 where the Government does not dispute that the accused is the mother of a protected offender?

**4.** My answers to these questions are below:

    **(a)** In Article 281 of the Turkish Criminal Code Law No. 5237 ("TCC") destroying, erasing, concealing, changing and damaging are listed as optional acts. In offences with optional actions, it is not necessary to fulfil all of the actions, and the fulfilment of any of the actions in the type is considered sufficient in terms of committing an offence[1].

    Destroying is to eliminate the evidence, to destroy it, to make it impossible to benefit from its material existence [2]. For example, burning a document that has the quality of evidence is the destruction of evidence.

    Erasure is the deletion of a written evidence or the removal of digital data from the media in which it is stored. Erasing the writings on the document or deleting the data loaded on the hard-disk will be considered within the scope of this act[3]. It should be noted that the restoration of deleted data by technical means does not mean that the offence has not occurred.

    Concealment is to hiding or prevent the visibility of the evidence or to change the location of the evidence in order to obstruct its detection by other persons without any action being taken on the evidence of the offence[4]. For example, taking the pistol, which is an instrument of crime, to another place in order to obstruct its detection or camouflaging it in such a way that it cannot be seen.

    Alteration is the changing of the evidence into another form and differentiating its meaning and content. The substitution of another piece of evidence in place of the existing evidence is also considered within the scope of substitution[5].

    Damage is the prevention of the evidence from fulfilling its expected function [6]. For example, preventing the playback of images by damaging the tape on which they are recorded.

    **(b)** The crimes of destruction, concealment and alteration of criminal evidence under Article 281 of the TCC and the crime of protecting the guilty under Article 283 of the TCC provide for different areas of protection. In cases such as concealing a person who has committed a crime in order to prevent him/her from being

---

[1] **ARTUK, Mehmet Emin/GÖKCEN, Ahmet/ALŞAHİN, Mehmet Emin/ÇAKIR, Kerim;** *Ceza Hukuku Genel Hükümler*, 13th Edition, Adalet Publishing, Ankara 2019, 319; **ÖZTÜRK, Bahri/ERDEM, Mustafa Ruhan;** *Uygulamalı Ceza Hukuku ve Güvenlik Tedbirleri Hukuku*, 23rd Edition, Seçkin Publishing, Ankara 2023, 211; **ÖZGENÇ, İzzet;** *Türk Ceza Hukuku Genel Hükümler*, 13th Edition, Seçkin Publishing, Ankara 2017, 173.
[2] **EVİK, Vesile Sonay;** "Suç Delillerini Yok Etme, Gizleme veya Değiştirme", *Özel Ceza Hukuku*, Cilt: 10, Adliyeye Karşı Suçlar, 1st Edition, On İki Levha Publishing, İstanbul 2021, 267; **GÖKCAN, Yaşar/ARTUÇ, Mustafa;** *Yorumlu – Uygulamalı Türk Ceza Kanunu Şerhi*, 6. Cilt, 3rd Edition, Adalet Publishing, Ankara 2022, 9198.
[3] **EVİK;** 268; **GÖKCAN/ARTUÇ;** 9198.
[4] **ÜNVER, Yener;** *İftira, Suç Uydurma, Suç Üstlenme, Yalan Tanıklık ve Bilirkişilik, Suç İhbar Etmemek Suçları (TCK'da Düzenlenen Adliyeye Karşı Suçlar)*, 6th Edition, Seçkin Publishing, Ankara 2021, 449; **DEMİRCİ, Vehbi;** *Suç Delillerini Yok Etme, Gizleme veya Değiştirme Suçu (TCK m. 281)*, T.C. Marmara Üniversitesi Sosyal Bilimler Enstitüsü Kamu Hukuku Anabilim Dalı, Yayımlanmamış Yüksek Lisans Tezi, İstanbul 2021, 91
[5] **ÜNVER;** 450; **GÖKCAN/ARTUÇ;** 9198.
[6] **EVİK;** 270.

caught by the judicial authorities and ensuring his/her escape, the offence under Article 283 of the TCC will occur, not Article 281 of the TCC.

It is also accepted by the Court of Cassation that enabling a person who commits a crime to escape or hiding him/her will constitute the offence of protecting the offender. In one of its decisions, the Court of Cassation ruled that in order for the offence regulated under Article 281 of the TCC to occur, the perpetrator must destroy, erase, conceal, alter or distort the evidence of a crime in order to prevent the truth from emerging, and that the defendants who provide the perpetrator with the opportunity to escape from the investigation and capture by not reporting the location of the incident correctly will be responsible for Article 283 of the TCC[7].

    i. In the evaluation of this question, different conclusions will be reached in terms of the minor being a suspect[8] and being a witness.

In the event that a minor is a suspect (these persons are referred to as children dragged to crime in the law), there are some procedural safeguards in Turkish criminal procedure law.

The most fundamental of these is the obligation of a defense counsel in the investigation and prosecution of the child dragged into crime. Pursuant to Article 150/3 of the Code of Criminal Procedure No. 5271 ('CPC'), a defense counsel shall be appointed to the child dragged into crime, regardless of the nature of the offence. Accordingly, in order for a criminal procedure to be valid, including the taking of the child's statement, the child's defense counsel must be present during the procedure.

Furthermore, pursuant to Article 15/3 of the Child Protection Law No. 5395, the investigation procedures regarding the child dragged into crime must be carried out by the prosecutor personally. In this context, it will be concluded that a minor cannot be questioned by law enforcement officers if he/she is a suspect.

A person, whether an adult or a minor, becomes a suspect when the investigation procedures are initiated. Pursuant to Article 160 of the Code of Criminal Procedure, the investigation begins when the prosecutor '*learns of a situation that gives the impression that an offence has been committed*'. This degree of suspicion is referred to as simple suspicion. For example, the order of the prosecutor to conduct an investigation upon the notification by the law enforcement officers at the scene of the incident upon a call is an investigation procedure since it is based on simple suspicion. In a similar manner, the instructions given by the prosecutor to the law enforcement officers upon a complaint of an offence are investigative actions. Since the investigation phase is conducted by the prosecutor, the acceptance of the existence of simple suspicion is also at the discretion of the prosecutor.

In the case of a minor as a witness, the enforcement officers are not authorized to take a witness statement. Pursuant to Article 43/5 of the Code of Criminal Procedure, witnesses may only be heard by the prosecutor or judge during the investigation phase and by the court during the prosecution phase. The law enforcement officer may ask questions within the scope of information gathering according to Article 15 of the Police Duties and Powers Code Law No. 2559 (PDPC) to understand

---

[7] "In order for the crime of destroying, concealing or altering the evidence of a crime regulated in Article 281 of the TCC to occur, the perpetrator must destroy, erase, conceal, alter or distort the evidence of a crime in order to prevent the truth from emerging, In the concrete case, there was no destruction, concealment or alteration of the evidence of crime or attempt to do so by the defendants, and their actions consisting of enabling the perpetrator of the offence of negligent injury, İ... Y..., the perpetrator of the offence of negligent wounding by failing to accurately report the manner and place of the incident, would constitute the offence of protecting the offender defined in Article 283/1 of the TCC." (9th Criminal Chamber of Court of Cassation., E. 2013/15955, K. 2014/1467, 10/02/2014, karararama.yargitay.gov.tr).

[8] Info Note: Turkish criminal procedure consists of the investigation phase in which the offence is investigated and the prosecution phase in which the person is prosecuted. A suspect is a person who is under suspicion of a crime during the investigation phase, and an accused is a person who is under suspicion of a crime from the start of the prosecution until the finalization of the judgement. In the case that constitutes the basis for the questions asked, since the criminal case has not yet been filed, the actions taken or to be taken against the suspect in the investigation phase are taken as basis.

whether the person is a witness or not. However, the witness statement of the person cannot be taken by the law enforcement officer at the scene of the incident or at the police station. Therefore, if the law enforcement officer knows that the person is a witness, he/she can only ask questions about identification information, but not questions that may replace the witness statement. In case it is realized later that the person whose information was obtained is a witness to the crime, his/her statement must be taken again during the prosecution phase in order for his/her statement to constitute the basis for the judgement.

ii. As mentioned above, the statement of a minor as a suspect or witness cannot be taken by the police force during the investigation phase.

Nevertheless, if the act or the existence of a suspect has not yet been determined when an offence has been committed, the law enforcement has the authority to gather information according to Article 15 of the PDPC. Information gathering is based on the general investigative power of law enforcement officers to determine whether an offence has been or has not been committed. In some cases, it is possible to use the power to gather information in order to find out whether persons are witnesses or not during the investigation phase. However, there is no legal basis for that, and the statements made at this stage cannot be technically characterized as statement evidence[9].

The information-gathering process will only be relevant at the stage of determining whether there is an offence requiring an investigation. If, as a result of the information gathered, it is suspected that an offence has been committed, the prosecutor's office must be notified immediately in order to initiate investigation proceedings. Therefore, the information gathering process will come to the forefront at the stage prior to the investigation and the addressee of the process is not the suspect or the witness. Since the investigation is conducted by the prosecutor in the Turkish criminal procedure system, the law enforcement cannot use any of its powers during the investigation phase without the prosecutor's instruction[10].

The addressee of the information gathering process is not the suspect or witness[11], but the persons concerned. No person shall be compelled to make a statement or have his/her rights restricted during the collection of information[12]. Instead of an interrogation process, the aim here is to determine whether an inquiry into the offence, i.e. an investigation, should be conducted and, if no suspect has been identified, to determine who the suspect might be. For example, a law enforcement officer who encounters a traffic accident asking questions to the people around about how the accident occurred is an information gathering process. Moreover, information gathering will be carried out if the people who have information spontaneously tell what they know to the police.

The documents relating to the collection of information shall be included in the case file. However, these cannot be used as a substitute for the statement of the witness or suspect. If it is understood that the person whose information is consulted is a witness or suspect, in order for his/her statement to be used as evidence, his/her statement must be taken in accordance with the procedure in the Criminal Procedure Code.

The statement of any person under suspicion of a criminal offence cannot be obtained through information gathering. For this purpose, a statement must be taken in accordance with Articles 147

---

[9] **BİRTEK, Fatih;** *Ceza Muhakemesinde Delil ve İspat*, 1st Edition, Adalet Yayınevi, Ankara2016, 139.
[10] **ÜNVER, Yener/HAKERİ, Hakan;** Ceza Muhakemesi Hukuku, 19th Edition, Adalet Publishing, Ankara 2022, 228.
[11] The Court of Cassation concluded that if a lie is told during the information-gathering process by the police, the offence of perjury under Article 272 of the TCC will not occur, as this is not a witness statement. Cf. 8th Criminal Chamber of Court of Cassation, E. 2019/20365, K. 2020/11559, 16/03/2020, www.kazanci.com.tr.
[12] **YENİSEY, Feridun;** *Kolluk Hukuku*, 3rd Edition, Beta Publishing, İstanbul 2023, 413.

and 148 of the Code of Criminal Procedure. The statements of witnesses cannot be taken by law enforcement officers pursuant to Article 43/5 of the Code of Criminal Procedure.

iii. The delayed access to the evidence by the authorities should be evaluated especially in terms of the act of concealing the evidence. At this point, different evaluations can be made according to the type of evidence. The offence under Article 281 of the TCC may be committed with special intent (*dolus specialis*). The perpetrator, with the definition in the law, must perform the acts constituting an offence 'in order to prevent the truth from coming to light'. Accordingly, the offence under Article 281 of the TCC will occur if the delayed access to the evidence will impact the evidentiary quality of that thing, especially its ability to represent the event. For example, if a piece of clothing with DNA samples on it is delivered to the judicial authorities after a while, if no results can be obtained from the DNA test, concealment and destruction of evidence will come to the agenda.

On the other hand, a separate evaluation should be made in case of delaying the witness to make a statement. Because the subject of the offence under Article 281 of the TCC is evidence. Witness statement is evidence, but the witness is a source of evidence[13]. It is accepted that this offence can only be committed in relation to material evidence[14]. Therefore, the acts against the witness should not be evaluated within the scope of this offence, but within the scope of the separate offences related to witnesses in the Turkish Criminal Code.

The false statement of the witness shall constitute the offence of false testimony regulated under Article 272 of the TCC. The perpetrator of this offence is the person who gives false testimony. The person who directs this person to make a false statement and makes him/her decide to commit an offence will also be held responsible as an abettor for the offence of perjury[15].

In addition, forcing a witness to make a statement in order to unlawfully prevent the truth from emerging or to create an injustice will constitute the offence of attempting to influence a judicial officer, expert or witness regulated under Article 277 of the TCC. The practice of the Court of Cassation is also in accordance with this approach[16].

In this context, if a tampering or concealment is made on the witness testimony taken, for example, on the record or transcript, the offence under Article 281 of the TCC may occur. This is because the witness statement has now been given a material existence. On the other hand, while the witness statement has not yet been taken, the offence under Article 281 of the TCC is not committed, but the offence of instigating the offence of perjury under Article 272 of the TCC in case of a request to change the witness statement, or the offence of attempting to influence a judicial officer, expert or witness under Article 277 of the TCC in case of an unlawful attempt to influence a witness.

As a result, causing the witness to make a delayed statement only so as not to obstruct the proceedings will not constitute the offence of destruction, concealment or alteration of evidence under Article 281 of the TCC. Therefore, taking the children from the scene of the incident to their own residence, which registered in the central civil registration system, without the aim of affecting the accuracy of the statement does not constitute the offence of destruction, concealment or alteration of evidence. However, unlawful attempts to influence a witness's truthfulness are not punishable under Article 281 of the TCC, but may be punishable under other articles as described above.

---

[13] **BİRTEK;** 23; **AYDIN, Devrim;** *Ceza Muhakemesinde Deliller*, 1st Edition, Yetkin Publishing, Ankara 2014, 40; **ŞAHİN, Cumhur/GÖKTÜRK, Neslihan;** *Ceza Muhakemesi Hukuku*, 14th Edition, Seçkin Publishing, Ankara 2023, 416.
[14] **GÖKCAN/ARTUÇ;** 9195.
[15] **GÖKCAN/ARTUÇ;** 9202; **DEMİRCİ;** 62.
[16] "In the investigation phase, although the defendant was sentenced for the crime of destroying, concealing or altering the evidence of crime due to the action of the defendant pressuring the witness who made a statement against his brother to change his statement, the defendant's action will constitute the crime of attempting to influence the judicial officer, expert or witness regulated in Article 277/1 of the TCC." (8th Criminal Chamber of Court of Cassation, E. 2021/2890, K. 2021/19198, 19/10/2021, kararara.yargitay.gov.tr).

**(c)** The offences of destroying, concealing and altering criminal evidence under Article 281 of the TCC and the offence of protecting the offender under Article 283 of the TCC provide protection in two different areas. In cases such as concealing a person who has committed a crime in order to prevent him/her from being caught by the judicial authorities and ensuring his/her escape, the offence under Article 283 of the TCC will come to the fore, not Article 281 of the TCC.

In the event that one defendant hides the other defendant in the offence committed in collaboration, the Court of Cassation has concluded that the offence under Article 283 of the TCC will occur, not Article 281 of the TCC[17]. The existence of complicity among the defendants is also important in terms of the answer to the above question. Because, in Article 283/3 of the TCC, which regulates the reason for personal impunity, close relatives as well as accomplices are regulated. Therefore, the fact that a person benefits from the reason for personal impunity under Article 283/3 of the TCC means that he/she cannot be held liable under Article 281 of the TCC.

Therefore, within the framework of both the criminal regulations and the jurisprudence of the high court, it is concluded that acts such as evading suspicion from the crime scene and hiding will not constitute the crime of destroying, concealing or altering the evidence of crime under Article 281 of the TCC, but the crime of protecting the offender under Article 283 of the TCC. Therefore, the reason of personal impunity under Article 283/3 of the TCC is not important in determining which of the two offences the perpetrator will be held responsible for.

**(d)** The subject of the offence is the material object on which the act constituting the offence occurs. The subject of the offence regulated under Article 281 of the TCC is evidence. Destruction, concealment or alteration of a thing that does not constitute evidence shall not constitute an offence[18].

In this aspect, it is necessary to determine the definition of evidence. Evidence is the instruments used in order to clarify the incident that is the subject of the case and to reach a conclusion for the purpose of proof[19]. Therefore, the evidence must represent the event subject to the accusation, and it must serve to visualize the event for the court[20]. The incident to be proved by evidence include both the act and the person who committed the act[21].

In this respect, if an object does not have any function in proving the offence or the person who committed the offence, it will be concluded that it does not have the status of evidence, and this object will not be subject to the offence under Article 281 of the TCC.

In an accusation under Article 281 of the TCC, the subject matter of the offence must be included in the allegation. In terms of Article 281 of the TCC, the subject of the offence is the key element in determining whether the offence has occurred or not. In this respect, in order to assume that there is sufficient suspicion for the issuance of the indictment or strong suspicion for the application of the arrest measure, the outcome of the object, which has the qualification of evidence that may be the subject of the crime under Article 281 of the TCC, must be understood from the case file.

**(e)** Article 283/3 of the TCC states that '*Where the offence is committed by a direct-antecedent, direct-descendent, spouse, sibling or an accomplice to the offence, no penalty shall be imposed*'. The relevant provision is a ground for personal impunity. The grounds for personal impunity are the reasons specifically prescribed in the code, other than the elements of the crime, and which, in terms of their effect, ensure that

---

[17] "As it is seen from the whole case file that the defendant R.... hid the defendant İ.... in his house in Mudanya for 20 days, without considering that his act complies with Article 283 of the Law No. 5237, to convict him with Article 281 of the same Code" (1st Criminal Chamber of Court of Cassation, E. 2006/4068, K. 2007/1526, Tarih: 14/03/2007, www.kazanci.com.tr).
[18] **ÜNVER;** 449.
[19] **ÜNVER/HAKERİ;** 581 **BİRTEK;** 18
[20] **CENTEL, Nur/ZAFER, Hamide;** *Ceza Muhakemesi Hukuku*, 15th Edition, Beta Publishing, İstanbul 2018, 236.
[21] **AYDIN;** 19; **BİRTEK;** 375.

the perpetrator is not punishable[22]. Due to the fact that they are considered outside the elements of the crime, the act committed by the perpetrator continues to constitute a crime, but the perpetrator cannot be convicted and cannot be punished due to personal impunity. Accordingly, an offence will occur due to the actions of those listed in Article 283 of the TCC, but this person will not be punished in any way.

In case of the existence of a reason for personal impunity in terms of criminal procedure, at the end of the investigation phase, the prosecutor may decide not to prosecute according to Article 171/1 of the CPC. The prosecutor is authorized a margin of appreciation under this provision. The main rationale of the provision is that if it is not possible to punish the person charged with an offence at the subsequent prosecution stage due to the reason of personal impunity, there is no need to proceed to the prosecution stage. This will reduce the workload of the courthouse and relieve the person from the process of being charged with a criminal offence at the court.[23].

However, as I mentioned above, in the presence of a reason for personal impunity, the prosecutor has margin of appreciation in filing a criminal case. Therefore, the prosecutor may either decide not to prosecute or issue an indictment for the filing of a criminal case.

If the prosecutor decides to issue an indictment, the prosecution phase will start with the acceptance of the indictment by the court pursuant to Article 175/1 of the Code of Criminal Procedure. During the trial phase of the prosecution, it is investigated whether the defendant has committed the alleged offence. At the end of the prosecution phase, even if it is determined that the alleged offence has been committed, the defendant will not be convicted due to personal impunity, and a decision of not to impose a penalty will be ruled in accordance with Article 223/4-b of the Code of Criminal Procedure.

In this respect, in the presence of personal impunity, a criminal case may be filed against the person, but even if a lawsuit is filed, it is not possible for the person to be convicted and therefore punished as a result of this trial.

**(f)** Article 283/3 of the TCC states that '*Where the offence is committed by a direct-antecedent, direct-descendent, spouse, sibling or an accomplice to the offence, no penalty shall be imposed*'. The relevant provision is a ground for personal impunity. Refer to the answer to question 3.5 on the ground of personal impunity and its implications for criminal and criminal procedure law.

In the case of personal impunity, a criminal case may be filed against the person, but even if a criminal case is filed, it is not possible to punish or convict the person as a result of this case.

**(g)** According to Turkish law, the bond between the mother and her child is established with birth. Records are also created in accordance with this. These records are kept according to the Population Services Law No. 5490. Article 3 of this Code defines the central database as '*the data kept electronically by the General Directorate of Population and Citizenship Affairs*'. Again, in Article 5 of the Code, the civil registry is defined as '*an official document that must be kept permanently, in which population events are registered on a district and family basis in order to determine the identities, residential addresses, family ties, citizenship status and personal circumstances of persons*'. In Article 6 titled 'Keeping Population Registers', it is written as follows: '*Population events are registered in the family registers in the population directorates and in the central database by using the communication network*'.

In this context, it is regulated in Article 10 of the Population Services Law No. 5490 that the records of civil registry events such as births, marriages, divorces and deaths are kept in electronic environment and that the civil registry records shall be taken as basis in the legal procedures related to the person in the

---

[22] **MERAKLI, Serkan;** *Cumhuriyet Savcısının Kamu Davasını Açmada Takdir Yetkisi*, 1st Edition, Seçkin Publishing, Ankara 2014, 116.
[23] **MERAKLI;** 120.

institutions. Unless there is a situation such as correction of the record by filing a civil lawsuit, official records will be sufficient to prove the family bond between persons.

**(h)** Article 283/3 of the TCC states that '*Where the offence is committed by a direct-antecedent, direct-descendent, spouse, sibling or an accomplice to the offence, no penalty shall be imposed*'. The relevant provision is a ground for personal impunity. Refer to the answer to question 3.5 on the ground of personal impunity and its implications for criminal and criminal procedure law.

In the case of personal impunity, a criminal case may be filed against the person, but even if a criminal case is filed, it is not possible to punish or convict the person as a result of this case.

In witness whereof, under the sanctions and penalties against perjury, false testimony, false expertise and misconduct in office I have affixed my signature below. **This 1st day of September in the year 2024.**

Assoc. Prof. Aras Türay

Özyeğin University Faculty of Law, Criminal and Criminal Procedure Law, Faculty Member